IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

REGINALD TYRONE MURPHY,      )
                                    )
      Plaintiff,               )
                                      )
      v.                       )      Case No. 15-cv-02246-SEM-TSH
                                      )
DAN WILLIAMS,              )
NANCY STEVELEY          )
                                    )
                                    )
      Defendants.          )

## MOTION FOR SUMMARY JUDGMENT

NOW COME Defendants, DAN WILLIAMS and NANCY STEVELEY, by their attorneys, QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO, and for their Motion for Summary Judgment, state as follows:

### I. Introduction

Plaintiff claims that the Defendants, who provided care and treatment to him while he was a federal detainee at the Moultrie County Jail, were deliberately indifferent to his complaints of tooth pain, and that they delayed referring him to a dentist. Many of the legal and factual issues raised by the Plaintiff in the instant suit, however, have already been decided, against his interests, in Central District of Illinois Case No. 14-cv-2125 (*Reginald Tyrone Murphy v. Sheriff Jeff Thomas, Sergeant Robert Kidd and Jail Administer Trussell*). It is Defendants' position that Judge Bruce's findings of fact, and conclusions of law, contained within his Order granting summary judgment in favor of the defendants in 14-cv-2125 collaterally estops the Plaintiff's claims in the case at bar, and, as such, the Dan Williams and Nancy Steveley are entitled to summary judgment as a matter of law.

In the alternative, even if the claims were not estopped, the record before the Court establishes that on each occasion that the Plaintiff complained of tooth pain the medical and correctional staff assessed him, and he was provided medical treatment, including pain medications, antiviral medications, numbing agents, and antibiotics. Further, the Defendants regularly evaluated the Plaintiff's condition, and when they determined, based upon their training, education, and experience, that referral to a dentist and/or oral surgeon was necessary, the Defendants promptly provided those referrals.

Accordingly, the record before the Court establishes that the Plaintiff has failed to put forward any evidence to support his claim that the Defendants were deliberately indifferent to his serious medical needs. As such, summary judgment in their favor is warranted.

## II. Exhibits

A.  Deposition of Reginald Tyrone Murphy taken in Central District of Illinois case No. 14-cv-2125. Submitted in this case pursuant to Federal Rule of Civil Procedure 32(8).

B.  Declaration of Defendant Dan Williams, originally filed in Central District of Illinois case No. 14-cv-2125, but also adopted by Dan Williams in the instant case, and disclosed to Plaintiff in Defendants' initial, and expert, disclosures.

C.  Declaration of Defendant Nancy Steveley, originally filed in Central District of Illinois case No. 14-cv-2125, but also adopted by Dan Williams in the instant case, and disclosed to Plaintiff in Defendants' initial, and expert, disclosures.

D.    Judge Bruce's January 28, 2016 Order granting summary judgment in favor of the Defendants in Central District of Illinois Case No. 14-2125.

### III. Statement of Undisputed Material Facts and Binding Conclusions of Law

### A.    Judge Bruce's Order in 14-cv-2125

The following facts, and legal conclusions, numbered 1-23, come from Judge Bruce's January 28, 2016 Order granting the defendants summary judgment in Central District of Illinois Case No. 14-cv-2125. It is the instant Defendants' position that, pursuant to the doctrine of collateral estoppel, these facts and conclusions are binding on the Plaintiff in the instant matter. It should be noted that Exhibits A, B and C were all part of the record in 14-cv-2125, and were materials relied upon by Judge Bruce in his Order.

1.    During the time period relevant to this suit, Plaintiff was a federal pre-trial detainee being held at the Moultrie County Jail in Sullivan, Illinois. (Exhibit D, page 2).

2.    During the relevant time period, the Moultrie County Jail maintained a contract with Advanced Correctional Healthcare, Inc. under which Advanced Correctional Healthcare provided medical care to Moultrie County Jail detainees. (Exhibit D, page 3).

3.    Pursuant to that contract, Dan Williams, a licensed physician assistant and Nancy Steveley, a licensed nurse, provided services to the Moultrie County Jail detainees. (Exhibit D, page 3).

4.    Murphy's first complaint of tooth pain while he was at the Moultrie County Jail occurred on November 15, 2013. (Exhibit D, page 3).

5.      On that date, Nancy Steveley examined the Plaintiff, noticed an opening and swelling around his left back wisdom tooth and, following consultation with PA Dan Williams, provided an antiviral medication for Murphy to take twice a day. (Exhibit D, page 3).

6.      Dan Williams examined Plaintiff on November 27, 2013. (Exhibit D, page 3).

7.      During this examination, PA Williams noted an abrasion to the inner lining of Murphy's left cheek, but did not notice any bleeding or edema. (Exhibit D, page 3).

8.      As a result of his examination, PA Williams diagnosed Murphy with an an infection of the lymph glands, and prescribed an antibiotic for Murphy to take twice a day for 10 days. PA Williams also ordered that Murphy be given Ibuprofen for pain. (Exhibit D, page 3).

9.      In PA Williams' professional opinion, a dental referral was not necessary on November 27, 2013. (Exhibit D, page 3).

10.     Between November of 2013 and May of 2014, PA Williams and Nurse Steveley examined Murphy on various occasions. (Exhibit D, page 4).

11.     During this time period PA Williams and Nurse Steveley provided antibiotics and pain medication for Murphy, as needed. (Exhibit D, page 4).

12.     Between November of 2013 and early April of 2014 Nancy Steveley and PA Williams remained of the professional opinion that dental referral was not necessary for Plaintiff's tooth. (Exhibit D, page 4).

13.     On April 12, 2014 Plaintiff presented to Nurse Steveley and noted a "hole in his jaw" near his wisdom tooth. (Exhibit D, page 4).

14.     On April 29, 2014, PA Williams examined Murphy and determined that Murphy's wisdom tooth needed to be examined by a dentist. (Exhibit D, page 4).

15.     As Murphy was a federal detainee, the financial obligation for his medical and dental services rests with the U.S. Government, and all medical services (other than emergency services) must be approved by U.S. Marshall's Service. (Exhibit D, page 4).

16.     On May 14, 2014, Dr. Havlik (a licensed dentist) examined Murphy's wisdom tooth and recommended that Murphy's wisdom tooth be extracted. (Exhibit D, page 4).

17.     On May 28, 2014 Dr. Banghart, an oral surgeon, surgically removed Murphy's wisdom tooth. (Exhibit D, page 4).

18.     By Murphy's own admission, he received medical treatment from PA Williams and from Nurse Steveley whenever he requested it, and the medical records support this fact. (Exhibit D, page 11).

19.     The undisputed evidence reveals that PA Williams and Nurse Steveley exercised their professional judgment in determining that a referral was not initially necessary, and that they continually monitored the situation, and provided antibiotics and pain medication as needed.   (Exhibit D, page 13).

20.     When the situation became worse, PA Williams and Nurse Steveley began the process to seek an outside referral to a dentist and, ultimately, to an oral surgeon who extracted the wisdom tooth.   (Exhibit D, page 14).

21.     There is no verifying medical evidence in the summary judgment record to show that any alleged delay in treatment caused Murphy to suffer harm, or somehow violated Murphy's 14th Amendment rights. (Exhibit D, page 14).

22. Murphy's unsubstantiated opinion that he should have had his wisdom tooth pulled sooner is not evidence sufficient to preclude summary judgment. (Exhibit D, page 14).

23. In his Order granting summary judgment, Judge Bruce advised Plaintiff of his right to appeal, and of the mechanisms necessary to perfect an appeal. (Exhibit D, pages 14-15).

**B.  Plaintiff's Deposition Testimony, and the Declarations of Dan Williams and Nancy Steveley Filed in Case No. 14-cv-2125**

As noted above, and argued in detail below, it is Defendant' position that the Plaintiff's claims are collaterally estopped based on the findings of fact and rulings of law made by Judge Bruce in his January 28, 2016 Order. In the event, however, that the Court finds that some, or all, of the claims are not estopped, Defendants list below the facts from the record which they believe are undisputed, and warrant summary judgment in their favor, irrespective of the issue of collateral estoppel. These undisputed facts are numbered 24-71.

24. Reginald Tyrone Murphy was a detainee at the Moultrie County Jail from October 7, 2013 through Thanksgiving morning of 2014. (Exhibit A, pages 9-10).

25. When Plaintiff was booked into the jail on October 7, 2013, he did not have any problems with his teeth. (Exhibit A, pages 10-11).

26. In November 2013 Plaintiff began to experience tooth problems. (Exhibit A., page 11). He also started having bleeding and he put in a sick call to see the nurse. (Exhibit A, pages 11-12).

27.     When an inmate or detainee at the Moultrie County Jail wants to get medical attention, they put in a request, in writing, to be seen at sick call.   (Exhibit A, page 14).

28.     Plaintiff first put in a request to be seen in sick call for tooth pain on November 15, 2013. (Exhibit A, page 16).

29.     Plaintiff was seen by Nurse Nancy Steveley on November 19, 2013. (Exhibit A, pages 19-20),(Exhibit C, paragraph 13). Upon examination, Nurse Steveley noted that around the Plaintiff's back left wisdom tooth, there was an opening and swelling in the gum area. (Exhibit C, paragraph 13).

30.     Murphy asked for a referral to see a dentist and Nurse Steveley placed him on the list to see PA Williams, who would determine whether Murphy would be referred to a dentist or other outside provider. (Exhibit C, paragraph 13).

31.     In addition, pursuant to consultation with PA Williams, Murphy was given Clovir, an antiviral medication, twice a day for seven days. (Exhibit C, paragraph 13).

32.     Plaintiff was seen by Dan Williams on November 27, 2013. (Exhibit B, paragraph 14), (Exhibit C, paragraph 14).

33.     On November 27, 2013 PA Williams diagnosed an infection of the lymph glands and prescribed an antibiotic, Amoxicillin, to be taken twice day for ten days, and Ibuprofen 200 mg three times a day for seven days for the pain and inflammation. PA Williams also ordered that Murphy's blood pressure be monitored twice a week. (Exhibit B, paragraph 14), (Exhibit C, paragraph 14).

34.     It is PA Williams' medical opinion that a dental referral was not indicated on November 27, 2013. (Exhibit B, paragraph 14).

35.     On November 28, 2013 Plaintiff complained about tooth pain to Correctional Officer Weber who contacted PA Williams by phone. (Exhibit B, paragraph 15).

36.     PA Williams ordered that the Plaintiff be given two Tylenol, and two Ibuprofen tabs, twice a day, as well as an ice pack to address his complaints of pain. (Exhibit B, paragraph 15).

37.     On November 30, 2013 Plaintiff complained about tooth pain again to Correctional Officer Jean. PA Williams instructed Murphy to continue to take the Tylenol that had been prescribed two days earlier, and to continue taking his ten day course of antibiotics. (Exhibit B, paragraph 16).

38.     PA Williams had prescribed an antibiotic only two prior to November 30, 2014, and he was still waiting for that treatment to run its course. (Exhibit B, paragraph 17).

39.     The next time the Plaintiff was seen for complaints of tooth pain was on December 17, 2013 when he was examined by Nurse Steveley. (Exhibit B, paragraph 18), (Exhibit C, paragraph 18).

40.     Based upon her examination on December Nurse Steveley ordered Orogel for Plaintiff's gum soreness. (Exhibit C, paragraph 18).

41.     Plaintiff did not submit any requests to see medical personnel regarding his tooth between December 16, 2013 and January 12, 2014. (Exhibit A, page 78-79).

42.     On January 12, 2014 Murphy put in a sick call request complaining that the bleeding and swelling around his wisdom tooth had started again. (Exhibit A, pages 77-79), (Exhibit B, paragraph 19), (Exhibit C, paragraph 19).

43.     Dan Williams assessed the Plaintiff as suffering from non-emergent dental pain, and ordered Tylenol and Ibuprofen twice a day for five days, and requested that Nurse Steveley contact Dan Williams regarding the Plaintiff's complaints on January 14, 2014. (Exhibit C, paragraph 19).

44.     On January 14, 2014 Nancy Steveley contacted PA Williams and PA Williams prescribed Amoxicillin and Clovir for Plaintiff's infection. (Exhibit B, paragraph 20), (Exhibit C, paragraph 20).

45.     Plaintiff made no further complaints regarding tooth pain until February 27, 2014.   (Exhibit A, pages 86-91), (Exhibit B, paragraph 22), (Exhibit C, paragraph 22).

46.     On February 27, 2014 Plaintiff complained of tooth pain to a correctional officer who called PA Williams. (Exhibit C, paragraph 22). PA Williams ordered an antibiotic (Amoxicillin) for ten days, and two tabs of Tylenol 500 mg twice a day for five days for inflammation. (Exhibit C, paragraph 22).

47.     The following day, February 28, 2014 Murphy complained of tooth pain to Correctional Officer Jean who spoke with PA Williams. (Exhibit C, paragraph 23). The Officer indicated that Murphy had relayed that he had been in pain for 2 ½ days. (Exhibit C, paragraph 23).

48.     Dan Williams ordered four Ibuprofen, 800 mg tabs, twice a day for five days to address the patient's pain, and continued the antibiotics he had previously prescribed. (Exhibit C, paragraph 23).

49.     Neither Dan Williams nor Nancy Steveley received any requests to see Plaintiff at any time in March 2014. (Exhibit B, paragraph 24), (Exhibit C, paragraph 24), (Exhibit A, pages 97-99)

50.     On April 11, 2014 Murphy submitted a sick call request complaining that his tooth was cutting his cheek. A similar request was submitted on April 12, 2014. (Exhibit C, paragraph 25), (Exhibit B, paragraph 25).

51.     As a result of those complaints, Dan Williams ordered Tylenol and Ibuprofen twice a day for five days, and also directed the administration to have the Plaintiff seen by Nurse Steveley. (Exhibit C, paragraph 25), (Exhibit B, paragraph 25).

52.     As a result of these complaints, Nurse Steveley placed the Plaintiff on the list to see Dan Williams on his next visit to the jail, which was scheduled for April 29, 2014, so that he could start the referral process with the US Marshall for Plaintiff to see a dentist. (Exhibit B, paragraphS 25, 28), (Exhibit C, paragraph 25).

53.     The Plaintiff complained to a correctional officer on April 18, 2014 indicating that there was a cut on the side of his cheek near Plaintiff's tooth, and that Plaintiff was finding it difficult to move his jaw when the tooth was pressed against his cheek. (Exhibit C, paragraph 26).

54.     As a result of the complaints on April 18, 2014, Dan Williams thought it was medically appropriate to refer the Plaintiff for evaluation and treatment by a dentist. Dan Williams also ordered Tylenol and Ibuprofen twice a day for five days to address his pain.    (Exhibit C, paragraph 26).

55.     Dan Williams saw the Plaintiff on April 29, 2014. The medical progress note prepared that day indicated that the patient's left lower molar was not abscessed.   Dan Williams' assessment on this occasion was that Murphy needed to be assessed by a dentist for potential extraction of the left lower molar tooth. (Exhibit C, paragraph 28).

56.     Dan Williams instructed Nurse Steveley to start the process to get approval from the federal government to refer Murphy to a dentist. (Exhibit C, paragraph 28), (Exhibit B, paragraph 28).

57.     On April 29, 2014 Nancy Steveley submitted, on Murphy's behalf, a prisoner medical request to the US Marshall Service asking for approval to set an appointment with Dr. Williams Havlik, a local dentist. (Exhibit B, paragraph 29).

58.     Murphy was examined by Dr. Havlik on May 14, 2014. Dr. Havlik recommended that the tooth be extracted. (Exhibit B, paragraph 31), (Exhibit C, paragraph 31).

59.     On May 17, 2014 Nurse Steveley submitted, on Plaintiff's behalf, a prisoner medical request to the US Marshall Service asking for approval to send Murphy to Dr. Phillip Banghart, an oral surgeon, for extraction of the wisdom tooth. Nurse Steveley had already set up an appointment for Murphy with Dr. Banghart on May 28, 2014, in anticipation of the Marshall's Office approving the request. (Exhibit B, paragraph 32).

60.     The US Marshall Service approved the request on May 20, 2014. (Exhibit B, paragraph 32), (Exhibit C, paragraph 32).

61.     Murphy complained of tooth pain on May 26, 2014 to Correctional Officer Clough, who spoke with Dan Williams. Dan Williams ordered Plaintiff to apply a cold compress to the area.   (Exhibit C, paragraph 33).

62.     On May 28, 2014 the impacted tooth was surgically removed under local anesthesia by Dr. Banghart.   (Exhibit B, paragraph 34).   (Exhibit C, paragraph 34).

63.     On each occasion when Dan Williams saw the Plaintiff, or when the Plaintiff's complaints were reported to him by the nurse or correctional staff, Dan

Williams appropriately exercised his medical judgment, in light of his training, education and experience. (Exhibit C, paragraph 37).

64.     Dan Williams did not deny Murphy any medical necessary care or treatment. While under Williams' care Plaintiff was administered ample and appropriate medication and treatment for his complaints of pain and swelling. (Exhibit C, paragraph 37 and 38).

65.     Dan Williams appropriately exercised his medical judgment did not delay in making a decision to refer Murphy to an outside dentist. In his judgment, a referral to a dentist was not medically necessary before April of 2014, because the Plaintiff's pain and infections could be adequately managed without a referral. (Exhibit C, paragraph 38).

66.     Nurse Steveley exercised her nursing judgment, based on her training and experience, in the treatment and care she provided to the Plaintiff.   (Exhibit B, paragraph 37).

67.     Nurse Steveley did not deny Murphy any medically necessary care or treatment.   While Murphy was under her care, he was administered ample and appropriate medication for his treatments of pain and swelling. (Exhibit B, paragraph 37).

68.     When Dan Williams determined that Murphy needed to be seen by a dentist, Nancy Steveley promptly took the necessary steps to prepare his request to the US Marshall Service for approval and set up appointments with the dentist and oral surgeon. (Exhibit B, paragraph 37), (Exhibit C, paragraph 39).

69.     In fact, the record establishes that Nurse Steveley scheduled the appointment with the oral surgeon even before the Marshall's Office had approved the treatment, in anticipation that it would be approved. (Exhibit B, paragraph 32).

70.     Neither Dan Williams or Nancy Steveley have control over how soon a detainee is seen by the outside dentist after the referral process is initiated because such treatment depends on approval by the federal government, and available time in the dentist's schedule. (Exhibit C, paragraph 39).

71.     Plaintiff agrees that the Medication Administration Records from the Jail are accurate, and reflect the medications that were ordered, were given by medical and/or correctional staff, except for on one occasion where a correctional officer misunderstood the PA's order. (Exhibit A, pages 37, 139-140).

72.     It is up to a physician or a physician assistant to determine whether a detainee is referred to an outside provider, such as a dentist or an oral surgeon. (Exhibit B, paragraph 5)(Exhibit C, paragraph 5).

## IV. Argument

### Law Applicable to §1983 Claims for Deliberate Indifference to a Serious Medical Need

Plaintiff Reginald Tyrone Murphy was a pre-trial detainee at the Moultrie County Jail between approximately November of 2013 and November of 2014. As a pre-trial detainee, his alleged claim for deliberate indifference arises under the 14th Amendment Due Process clause, rather than the 8th Amendment's Cruel and Unusual Punishment clause. *Thomas v. Cook County Sheriff's Dept.*, 604 F. 3d 293 (7th Cir. 2010). Regardless of this distinction, the legal analysis is essentially indistinguishable. *Id.*

The United States Supreme Court has recognized that there is a Constitutional duty on the part of the State not to be deliberately indifferent to the medical needs of its prison inmates. W*ellman v. Faulkner*, 715 F.2d 269, 271 (7th Cir. 1983). The Seventh Circuit has indicated that the State's affirmative obligation is to "provide persons in its custody with a medical care system that meets minimal standards of adequacy." *Id.* In order to proceed on a claim that a state actor was deliberately indifferent to his serious medical needs, a prisoner must establish two elements: 1) an objectively serious medical condition, and 2) deliberate indifference by the prison officials to that condition. *Knight v. Wiseman*, 590 F.3d 458, 464 (7th Cir. 2009).

To be "serious," a medical condition must be one that a physician has diagnosed as needing treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention. *Id.* To show indifference, the plaintiff must demonstrate that the defendant was actually aware of the serious medical need, and then was deliberately indifferent to it. *Id.* This requires a showing of more than mere or gross negligence, but less than purposeful infliction of harm. *Id.* The standard is a subjective one, and the United States Supreme Court has opined that deliberate indifference occurs when an official knows of, and disregards, an excessive risk to inmate's health or safety; the official must both be aware of facts in which the inference can be drawn that a *substantial risk of serious harm exists*, and he must also draw the inference. (Emphasis in original.) *Knight,* at 464, citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The United States Supreme Court, and the Seventh Circuit, have been equally clear that claims of medical malpractice, and mere negligence cannot, and do not, give rise to claims for deliberate indifference under Section 1983. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In fact,

courts have "labored mightily" to prevent the transformation of Eighth Amendment's Cruel and Unusual Punishment clause into a medical malpractice statute for prisoners. *Snipes v. Detella*, 95 F.3d 586, 590-591 (7th Cir. 1996). In the case of claims based upon inadequate prison medical care, *Estelle* requires courts to distinguish between deliberate indifference to serious medical needs of prisoners, on the one hand, and negligence in diagnosing or treating a medical condition on the other. *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996) citing 429 U.S. at 106. Only the former is a constitutional violation. *Steele*, at 178.

The exercise of medical judgment, which includes whether one course of treatment is preferable to another, is beyond Constitutional review and is instead a tort law issue. *Snipes*, at 590-591. A mere disagreement with the course of an inmate's medical treatment does not constitute support for a claim of deliberate indifference. *Id.*

## A. Plaintiff's Section 1983 Claims Against Dan Williams and Nurse Steveley are Barred Pursuant to the Doctrine of Collateral Estoppel

Judge Bruce, in his January 28, 2016 Order in Case No. 14-cv-2125, made findings of fact and reached conclusions of law which are dispositive of the Plaintiff's claims in the instant case. Accordingly, Plaintiff is barred from re-litigating those issues, and Defendants are entitled to judgment as a matter of law.

Federal Courts have traditionally adhered to the doctrine of collateral estoppel. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Under that doctrine, once a Court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a suit, on a different cause of action, involving a party to the first case *Id.* Collateral estoppel can be used "offensively" in a new federal suit

against the party who lost on the decided issue in the first case, provided the party had a full and fair opportunity to litigate that issue in the earlier case. *Id.* 95. Additionally, the party must have had a "meaningful opportunity to appeal" the resolution of the issue. *DeGuelle v. Camilli*, 724 F.3d 933, 935-936 (7th Cir. 2013).

When the conditions for applying collateral estoppel are satisfied, the doctrine promotes important goals: it allows a party only one opportunity to litigate an issue, thereby conserving the time and resources of the parties and the court; promotes the finality of judgments; preserves the integrity of the judicial system by eliminating inconsistent results; and ensures that a party not be able to re-litigate issues already decided against it in prior litigation. *Id.* 936.

As an initial matter, Defendants note that the cause of action asserted against the correctional officers in Central District of Illinois case 14-cv-2125 involves the same complaint of deliberate indifference at issue in the case at bar, *i.e.,* Plaintiff's claim that the defendants delayed referring him to a dentist for extraction of his wisdom tooth between November 13, 2013 and May 28, 2014. Although the time period, and the alleged serious medical condition, are identical, Defendants acknowledge that a different standard applies in deliberate indifference actions involving medical care when comparing the conduct of non-medical personnel, such as correctional officers, to the conduct of the medical providers who actually provided the care at issue. This distinction is referenced in Judge Bruce's decision, where he notes that correctional officers are entitled to rely upon the professional judgment exercised by medical professionals in treating detainees and inmates, without subjecting themselves to liability. (Exhibit D, page 11 citing *Hayes v. Snyder*, 546 F.3d 516 (7th Circ. 2008).

As demonstrated below, however, this distinction does not preclude application of collateral estoppel. The Plaintiff's claims in Case 14-cv-2125 was that the correctional officers were deliberately indifferent to his serious medical need by failing to intervene, which resulted in a delay in having his tooth extracted. In ruling in favor of the correctional officer defendants on this issue, Judge Bruce found that:

> The undisputed evidence reveals that PA Williams and Nurse Steveley exercised their professional judgment in determining that surgery was not necessary while they continually monitored the situation, provided antibiotics as needed, and provided pain medication to Murphy as needed. (citations omitted). When the situation became worse PA Williams and Nurse Steveley began the process to seek an outside referral to a dentist and ultimately to an oral surgeon who extracted his wisdom tooth. There is simply no verifying medical evidence in the summary judgment record to show that an alleged delay in treatment caused Murphy to suffer some degree of harm or somehow violated Murphy's Fourteenth Amendment rights.
>
> On the contrary, Murphy offers nothing more than his unsubstantiated opinion that he should have had his wisdom tooth pulled sooner, but his opinion is not evidence sufficient to preclude summary judgment in defendants' favor. (Exhibit D, pages 13-14).

The following facts and conclusions were necessary for Judge Bruce to reach the above-cited ruling:

1) Dan Williams and Nancy Steveley appropriately exercised their professional judgment in the care and treatment provided to the Plaintiff during the relevant time period;

2) there is no verifying medical evidence that any alleged delay in treatment caused Murphy to suffer constitutional harm and;

3) Plaintiff's unsubstantiated opinion that he should have had his tooth pulled earlier is not sufficient to defeat summary judgment.

While 14-cv-2125 was pending, Plaintiff had a full opportunity to litigate these issues, and following the entry of summary judgment, a meaningful opportunity to appeal that judgment. Accordingly, the conditions for the application of doctrine of collateral estoppel apply, and the Court should find that these facts and conclusions are binding upon the Plaintiff in the case at bar. These binding conclusions preclude the Plaintiff from being able to establish the *prima facie* elements of a deliberate indifference action against these Defendants. As such, Defendants are entitled to summary judgment as a matter of law.

**B.    In the alternative, Nancy Steveley and Dan Williams are entitled to summary judgment as Plaintiff has put forward no admissible evidence of deliberate indifference to any serious medical need.**

Although it is Defendants' position that their collateral estoppel argument is dispositive of the Plaintiff's claims, as an alternative position, even if collateral estoppel did not apply, Defendants would remain entitled to summary judgment as a matter of law because the Plaintiff has failed to put forward *prima facie* evidence to support his claim for deliberate indifference. As previously noted, to proceed on a claim that a state actor was deliberately indifferent to his serious medical needs, a prisoner must establish two elements: 1) an objectively serious medical condition, and 2) deliberate indifference by the prison officials to that condition. *Knight v. Wiseman,* 590 F.3d 458, at 464 (7th Cir. 2009). Plaintiff has failed to put forward evidence to support either of these elements.

**1.    Defendant Steveley cannot decide to refer a detainee to an outside provider**

Before discussing the treatment provided by the Defendants, it is first important to note that there is a distinction between the duties of Dan Williams and Nancy Steveley. Nancy Steveley is a nurse, and, as such, she cannot make medical diagnoses. The record before the Court establishes that the decision of whether to

refer a detainee to an outside provider for non-emergent treatment, the crux of the Plaintiff's Complaint, is made by a physician, or a physician assistant (Exhibits B and C, paragraph 5). Nurse Steveley's role in this matter was limited to conducting nursing assessments, reporting pertinent findings to Dan Williams, and once Mr. Williams made the decision to refer the detainee out, completing the paperwork to begin the referral process, as required the U.S. Marshalls' Office. As she could not make the decision to refer the patient out for dental treatment, she cannot be said to have been deliberately indifferent to the Plaintiff's alleged serious medical condition, and she is entitled to judgment as a matter of law.

To the extent the Plaintiff claims that Nurse Steveley was deliberately indifferent for failing to intervene, or in any other manner, those issues are addressed below.

### 2. Plaintiff has failed to put forward evidence of a serious medical condition during the pertinent time period.

To be "serious," for purposes for a deliberate indifference analysis, a medical condition must be one that a physician has diagnosed as needing treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention. *Id.* To be clear, Defendants acknowledge that tooth pain can be an objectively serious medical condition. See *Cooper v. Casey*, 97 F.3d 914 (7th Cir. 1996([painful medical conditions that are not life threatening can support Eighth and Fourteenth Amendment claims.)

Plaintiff's claim, however, at least as recognized by the Court in its Merit Review opinion, is not that the Defendants were deliberately indifferent to his complaints of tooth pain. Such a claim would likely not have survived Merit Review, given that the medical records establish, unequivocally, that each time the Plaintiff complained of

pain he was assessed, and pain medications, anti-biotics, and other medications were provided.

Instead, Plaintiff's claim appears to be that the Defendants were deliberately indifferent by delaying his referral to a dentist for extraction of the tooth. In order to proceed on such a claim, the Plaintiff has the burden of first establishing, through medical testimony, that he had a serious medical condition, *i.e*, a wisdom tooth requiring extraction, prior to the time he was referred to Dr. Havlik by the Defendants. See *Williams v. Liefer*, 491 F.3d 710, 714-715 (7th Cir. 2007)(in cases where prison officials delayed, rather than denied, medical assistance to an inmate, courts have required the plaintiff to offer "verifying medical evidence" that the delay caused some degree of harm. That is, a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental.)

As recognized by Judge Bruce, however, there simply is no verifying medical evidence submitted by the Plaintiff that an earlier extraction of the tooth was indicated. On the contrary, the only admissible expert opinions come from the Declarations' of Dan Williams and Nancy Steveley. Both of these health care professionals state that the care and treatment they provided to the Plaintiff between November of 2014 and April of 2014 was appropriate, and that prior to April of 2014 a referral to a dentist was not medically necessary. (Exhibit B, paragraph 37-38), (Exhibit C, paragraph 37). It is axiomatic that not all wisdom teeth require extraction, and there is no evidence that any dentist or oral surgeon would have recommended extraction of the tooth prior to April of 2014, when the Defendants began the process of having the Plaintiff seen by a dentist and oral surgeon.

Accordingly, because the Plaintiff has failed to put forward evidence that his tooth required extraction prior to the time the Defendants referred him to Dr. Havlik, he

has failed to establish that he had an objectively serious medical condition during the time frame complained of, and Defendants are entitled to judgment as a matter of law.

### 3. Plaintiff has put Forward no Evidence of Subjective Deliberate Indifference

Assuming, *arguendo*, that the Plaintiff could establish that he was suffering from a serious medical condition during the pertinent period complained of, he has failed to put forward evidence that the Defendants were deliberately indifferent to that condition. As previously set forth, the standard for assessing deliberate indifference is a subjective one, and the United States Supreme Court has opined that deliberate indifference occurs when an official knows of, and disregards, an excessive risk to inmate's health or safety; the official must both be aware of facts from which the inference can be drawn that a *substantial risk of serious harm exists*, and he must also draw the inference. (Emphasis in original.) *Knight* at 464, citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

With the *Farmer* standard in mind, for the Plaintiff to proceed in this case, he must show that the Defendants subjectively *knew* that his wisdom tooth needed to be extracted prior to April of 2014, and that they were deliberately indifferent to that need. Plaintiff simply cannot meet this burden.

The undisputed medical evidence indicates that PA Williams did not believe the Plaintiff needed a referral to a dentist prior to April of 2014. The medical records establish that all the Plaintiff's symptoms between November 13, 2013, and early April of 2014, were amenable to conservative treatment, including the use of pain medications, antibiotics and anti-viral medications. This is demonstrated by several periods of time where there are no complaints of tooth problems from the Plaintiff

following administration of conservative treatment. For example, there were gaps in Plaintiff's complaints of tooth pain between December 17, 2013 and January 12, 2014, between January 14, 2014 and February 27, 2014, and between February 28, 2014 and April 11, 2014. Prior to each of these gaps in complaints of tooth pain, the Plaintiff had been assessed by the Defendants, and had been provided medical treatment.

Given these undisputed facts, the Plaintiff's claims must boil down to two potential theories. First, he disagrees with the Defendants' assessment of his condition prior to the referral to Dr. Havlik, and therefore seeks to hold the Defendants liable for an alleged error in diagnosis. Even if the Plaintiff's lay opinion regarding his diagnosis was sufficient to counter the expert opinions of the Defendants, which, as recognized by Judge Bruce, it is not, the Plaintiff's claim would be one for negligent misdiagnosis, a state tort law claim. While Defendants stand by their assessment of the Plaintiff's condition, and deny that they were negligent in any fashion, even if was somehow demonstrated that they were incorrect in their assessment of the Plaintiff's condition, this would not give rise to a claim for deliberate indifference, as recognized by the United States Supreme Court in *Estelle*, and, as such, they are entitled to summary judgment.

The second potential argument Plaintiff may make is that he disagrees with the choice of treatments offered by the Defendants. Even if the Plaintiff could establish that the Defendants provided negligent treatment, which they deny, this would not amount to deliberate indifference. As stated by the Seventh Circuit in *Snipes*, a prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly

inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition. *Snipes* at 590-591.

No logical argument can be made that that the Defendants course of treatment was so blatantly inappropriate as to evidence intentional mistreatment. The medical records, the Declarations of the Defendants, and even the Plaintiff's own testimony, establish that on each occasion the Plaintiff complained of tooth pain the medical staff assessed him, and he was prescribed treatment including pain medications, antibiotics, numbing agents and anti-viral medications. Additionally, Plaintiff acknowledges that these medications were administered as recorded on the Jail's Medication Administration Records.

Further, the medical records and testimony support the fact that these treatments were, in fact, effective in treating the Plaintiff's complaints. As previously noted, there were lengthy gaps in the Plaintiff's complaints of tooth pain following administration of conservative treatment including between December 17, 2013 and January 12, 2014, between January 14, 2014 and February 27, 2014, and between February 28, 2014 and April 11, 2014. Prior to each of these gaps in complaints, the Plaintiff had been assessed by the Defendants, and had been provided medical treatment. There is simply no evidence that the treatments provided by Dan Williams and Nancy Steveley were, in any way, inappropriate, let alone so inappropriate as to evidence intentional mistreatment.

In sum, the record before the Court establishes that the Defendants exercised their medical judgment in the care and treatment they provided to the Plaintiff, and there is no evidence that the Defendants were deliberately indifferent to any alleged serious medical need of the Plaintiff. Accordingly, because Plaintiff has failed to

establish that the Defendants were subjectively aware of a serious medical condition, and were deliberately indifferent to that condition, the Plaintiff's claims must fail and Defendants are entitled to summary judgment as a matter of law.

## V. Conclusion

The case before the Court is the Plaintiff's second attempt at establishing that the Defendants were deliberately indifferent to his complaints of tooth pain while he was detained in the Moultrie County Jail. Judge Bruce has already decided, in Central District of Illinois Case No. 14-cv-2125, that the Plaintiff had failed to put forward evidence that these Defendants were deliberately indifferent to his serious medical needs. While the instant Defendants were not parties to that lawsuit, their conduct was a central issue, which Plaintiff had the full opportunity to litigate in that case.

Accordingly, because Judge Bruce, in Case No. 14-cv-2125, made binding finding of fact, and conclusions of law, that are, pursuant to the doctrine of collateral estoppel, binding on the Plaintiff in this case, and those findings and conclusions preclude the Plaintiff's claims against these Defendants, the Defendants are entitled to summary judgment as a matter of law.

In the alternative, even if the doctrine of collateral estoppel did not apply, the record before the Court, including the Declarations of the Defendants, the sworn testimony of the Plaintiff, and the pertinent medical records, establish that the Defendants exercised their medical and nursing judgment in the care and treatment they provided to the Plaintiff, and there is simply no evidence to support the Plaintiff's claims that Defendants were deliberately indifferent to his medical

24

condition. Accordingly, because Plaintiff has failed to establish a *prima facie* case for deliberate indifference, Defendants are entitled to judgment as a matter of law.

WHEREFORE, Defendants Dan Williams and Nancy Steveley respectfully request that this Court enter an Order granting their Motion for Summary Judgment together with such other relief as the Court deems just.

Dan Williams, P.A. and Nancy Steveley, Defendants

By: _____*s/Christopher D. Galanos*_____
Christopher D. Galanos
QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO

Christopher D. Galanos (Illinois Bar No. 6296544)
QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO
400 South Ninth Street, Suite 102
Springfield, IL 62701
Telephone: (217) 753-1133
Facsimile: (217) 753-1180
E-mail: cgalanos@quinnjohnston.com
C:\Users\jsisson\ND Office Echo\VAULT-4HRDA5KI\Motion for Summary Judgment 4817-5300-2546 v.1.docx

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2016, I electronically filed a Motion for Summary Judgment with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

None at this time.

I hereby certify that on July 18, 2016, I sent, via U.S mail, a copy of this Motion for Summary Judgment to:

Reginald Tyrone Murphy
I.D. No. 19071-026
FCI Talladega
P.O. Box 1000
Talladega, AL 35160

**LEGAL MAIL**

*s/Christopher D. Galanos*
Christopher D. Galanos (Illinois Bar No. 6296544)
QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO
400 South Ninth Street, Suite 102
Springfield, IL 62701
Telephone:      (217) 753-1133
Facsimile:      (217) 753-1180
E-mail: cgalanos@quinnjohnston.com

4817-5300-2546, v. 2